IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Jeffery Knight, | ) |
|     *Plaintiff,* | ) ) ) ) Case No. 3:21-cv-50183 |
| v. | ) ) Judge Iain D. Johnston |
| Merrill J. Zahtz, *et al.*, | ) ) |
|     *Defendants.* | ) |

**MEMORANDUM OPINION AND ORDER**

For the reasons stated below, Defendants' motion for summary judgment [87] is granted.[1] In short, this entire motion could be resolved based on a single undisputed fact. On about September 20, 2021, Plaintiff underwent elective hernia surgery at KSB Hospital by Dr. Hefty. The surgery was completed without complications. Dr. Hefty testified that he saw no need for Plaintiff's hernia surgery to occur earlier than September 20, 2021. Dkt. 114 ¶ 54. This undisputed fact sinks Plaintiff's claims. But, for the sake of completeness, the Court explains in detail— spanning nearly 20 pages—why summary judgment must be granted.

**I. Background**[2]

In May 2021, Plaintiff Jeffery Knight filed the instant lawsuit under 42 U.S.C. § 1983, alleging civil rights violations arising out of the medical care and treatment he received for his hernia while incarcerated at Dixon Correctional Center ("Dixon").

---

[1] The Court thanks recruited counsel for their time and efforts representing Plaintiff in this action.
[2] The following facts are taken from the parties' Local Rule 56.1 statement of material facts. Dkts. 91, 113–15. The facts are undisputed except where noted.

1

Dkt. 1. As set out in the operative amended complaint, Knight was allowed to proceed on claims against Defendants Dr. Merrill J. Zahtz, Dr. Carlos Fior, Dr. Stephen Ritz, and Wexford Health Sources, Inc., alleging deliberate indifference to his serious medical needs in violation of the Eighth Amendment. Dkts. 12–13.

In June 2016, while incarcerated at Danville Correctional Center, Knight was diagnosed with a left inguinal hernia after moving a property box in his cell. Dkt. 114 ¶ 21. Knight received a low bunk permit while at Danville. Dkt. 115 ¶ 2.

On April 15, 2019, Knight was transferred to Dixon. Dkt. 115 ¶ 4. Wexford is a private company that contracted with the State of Illinois to provide medical care and treatment to inmates at Dixon. Dkt. 114 ¶ 5. Zahtz, the medical director, and Fior, the associate medical director, were physicians employed by Wexford at Dixon. Dkt. 114 ¶¶ 2–3. Ritz was Wexford's corporate utilization management medical director until July 2020, when he became the chief medical officer. *Id.* ¶ 4. Ritz participated in collegial reviews regarding referral requests for off-site medical services. *Id.* ¶ 4.

On August 27, 2019, Knight saw nurse practitioner Susan Tuell for a complaint of a hernia. Dkt. 114 ¶ 22. Knight reported that his hernia increased in size and was impacting his activities of daily living. *Id.* Tuell assessed Knight with a left inguinal hernia that was easily reducible. *Id.* ¶¶ 22–23. Tuell submitted a request for a surgical consultation for Knight's hernia and gave him a low bunk permit for one year, noting that he had Tylenol and was wearing a hernia belt. *Id.* ¶ 23.

On September 5, 2019, Zahtz participated in a collegial review with Ritz regarding Tuell's referral request. Dkt. 114 ¶ 24. Ritz reviewed the referral request and supporting documentation, and he discussed the referral with Zahtz. *Id.* Based on the information available to him and his professional judgment, Ritz recommended an alternative treatment plan for Knight's hernia instead of a surgical consultation. *Id.* ¶ 25. This plan included using a hernia belt to stabilize Knight's hernia, instructing him to refrain from lifting anything, managing his weight if indicated, and instructing Knight to continue using analgesics for pain. *Id.* ¶ 25. The alternative treatment plan was based on the fact that Knight's hernia was easily reducible and did not meet other criteria that would necessitate surgery, such as strangulation, incarceration, or infection of the hernia. *Id.* ¶ 25.

On September 12, 2019, Zahtz saw Plaintiff to discuss the non-approval of Tuell's surgical consultation. Dkt. 114 ¶ 27. Zahtz noted that Knight's hernia did not need surgery because it was easily reducible and was causing minimal pain. *Id.* Zahtz examined Knight's hernia and told him it was hard to tell he had a hernia. *Id.* ¶ 28. Knight reported that his constipation and straining was putting pressure on his hernia, but he admitted he was not taking the medications that helped his constipation. *Id.* ¶ 27. Zahtz instructed Knight to adhere to the treatment plan for his constipation and to keep using his hernia belt, Tylenol, and fiber tabs. *Id.* ¶¶ 27–28. On December 5, 2019, nurse practitioner Kristina Mershon saw Knight for a chronic clinic visit and noted that Knight's hernia was non-tender to palpation. *Id.* ¶ 30.

3

On April 8, 2020, Fior saw Knight at his cell for his hernia. Dkt. 114 ¶ 31. On examination, Fior noted that Knight's hernia was not incarcerated, strangulated, or infected and it was still fully reducible. *Id.* ¶ 32. Fior assessed Knight with a reducible inguinal hernia and instructed him to follow up with the medical staff if his hernia worsened. *Id.* ¶ 32. It was Fior's clinical opinion and professional judgment that Knight's hernia did not warrant a surgical referral at that time. *Id.* ¶ 33. Knight had been provided appropriate conservative treatment measures for his hernia, including a hernia belt and pain medication, and Fior did not believe that additional pain medications or further treatment were medically necessary. *Id.* ¶ 33.

Fior avers in his declaration that Knight was not in any acute distress at the time of the examination because he would have noted such in the medical record. Dkt. 114 ¶ 31. However, Knight testified that he told Fior that the hernia was still causing him a significant amount of pain and that he could no longer wear his hernia belt because he was outgrowing it. Dkt. 115 ¶ 7. Knight testified that Fior informed him that "you already know the policy, that unless [your hernia] doesn't go back in, they are not going to do nothing for you." *Id.* However, Fior avers that he did not tell Knight this. Dkt. 115 ¶ 7; Dkt. 91-4 ¶ 20. It is undisputed that Fior has no knowledge of such a policy or that one exists. Dkt. 114 ¶ 34. It is also undisputed that the prevailing guidance from Wexford and the Illinois Department of Corrections was simply to utilize his professional clinical judgment when treating patients, and he was under no limitations as to when he could refer a patient for surgical treatment of a hernia. *Id.* Knight also testified that he continued to file grievances about his

4

worsening hernia but has failed to attach these grievances to his statement of additional material facts to support to contents of these grievances. *See* Dkt. 115 ¶ 5.

On December 11, 2020, nurse practitioner Chelsea Sword saw Knight for a complaint of hernia pain. Dkt. 114 ¶ 35. Knight informed Sword that sometimes the Tylenol "doesn't even touch the pain." *Id.*; Dkt. 92, Exhibit 7. On examination, Sword noted that Knight was in no acute distress and his hernia was small, not bulging, and fully reducible but was tender to palpation. Dkt. 114 ¶ 36. Sword prescribed Knight Tramadol and instructed him to continue wearing his hernia belt and to avoid activities that exacerbate his pain. *Id.*

On February 8, 2021, Sword saw Knight for the management of his pain medications. Dkt. 114 ¶ 37. In response to Knight's request, Sword prescribed him Ultram and instructed him to continue using his hernia belt and to avoid activities that exacerbate his pain. *Id.* On April 21, 2021, Sword saw Knight for a complaint that his pain medications were no longer working. *Id.* ¶ 38. Knight told Sword that his hernia remained fully reducible, and on examination he was in no acute distress. *Id.* ¶ 38. Sword noted the presence of small bilateral inguinal hernias for the first time that were fully reducible but tender to palpation. *Id.* ¶ 38. Sword changed the dose of Knight's Tramadol. *Id.* ¶ 38.

On May 19, 2021, Zahtz saw Knight at the request of the health care unit administrator due to a recent grievance he filed. Dkt. 114 ¶ 39. Zahtz noted that Knight's left inguinal hernia was non-tender and easily reducible without pain and did not order further treatment at that time. *Id.* ¶ 39.

On June 9, 2021, Sword saw Knight for his complaint of uncontrolled hernia pain. Dkt. 114 ¶ 41. Knight stated that his Tramadol was not helping, and his hernia pain was constant. *Id.* Knight was not wearing his hernia belt at that time. *Id.* ¶ 42. On examination, Knight was in no acute distress, his abdomen was soft and non-tender, and his hernia was small and fully reducible. *Id.* ¶ 42. Sword prescribed Knight Tylenol 3 and a 30-day "lay in" and instructed him to continue taking his Tramadol and using his hernia belt. Dkt. 114 ¶ 42. Sword planned to see Knight again in two weeks. *Id.* On June 22, 2021, when Knight saw Sword for a follow up, he reported that his Tylenol 3 had been helpful for his pain, and he was not interested in changing his pain medications at that time. *Id.* ¶ 43. On examination, Sword noted that Knight's left inguinal hernia was small, non-tender, and fully reducible. *Id.* ¶ 43. Sword assessed Knight with constipation and instructed him to take his laxative and maintain adequate hydration. *Id.* ¶ 43.

On July 12, 2021, Sword saw Knight for a complaint of hernia pain. Dkt. 114 ¶ 44. Knight reported that his hernia pain was not controlled and was affecting his daily activities. *Id.* Knight further reported that his hernia was popping out more and becoming more difficult to reduce. *Id.* On examination, Sword noted that Knight was in no acute distress with a steady gait. *Id.* ¶ 45. Sword assessed Knight with a left inguinal hernia and increased pain and submitted an urgent referral request for a surgical consultation. *Id.* ¶¶ 46–47. She also provided Knight with Tylenol 3 and instructed him to continue using his hernia belt and avoid heavy lifting. *Id.* ¶ 46.

6

On the same day, Sword's referral request was automatically approved by Wexford's utilization management department because the collegial review process was no longer part of the renewed Wexford contract with the Illinois Department of Corrections. Dkt. 114 ¶ 48. On August 3, 2021, Knight saw Dr. Matthew Hefty, a surgeon at KSB Hospital in Dixon, Illinois, for his hernia. *Id.* ¶ 49. Knight reported experiencing bilateral groin discomfort and bulging that was getting worse and limiting his activities. Dkt. 114 ¶ 49. On examination, Hefty noted that Knight had bilateral inguinal hernias, with the left being greater than the right, and did not report any acute distress. *Id.* ¶ 50. Hefty further noted that Knight's left hernia was reducible with partial non-reducibility but no signs of strangulation. *Id.* ¶ 50. Hefty recommended surgery to repair the bilateral inguinal hernias. *Id.* ¶ 51. Hefty testified that Knight's hernia did not present in an emergent state that needed immediate or urgent surgery. *Id.* ¶ 51.

On August 10, 2021, Zahtz submitted a referral request to return Knight to KSB hospital for bilateral inguinal hernia repair with mesh. Dkt. 114 ¶ 52. On August 18, 2021, Wexford's utilization management department approved Zahtz's referral request for hernia surgery. *Id.* ¶ 53. On September 20, 2021, Knight underwent elective hernia surgery by Hefty at KSB Hospital. *Id.* ¶ 54. Knight's surgery was completed without complications. *Id.* ¶ 54. Hefty testified that he saw no need for Knight's hernia surgery to occur earlier than September 20, 2021. *Id.* ¶ 54. Knight returned to see Hefty on September 28, 2021, and was doing well after surgery. *Id.* ¶ 55.

Defendants seek summary judgment on all the claims against them, arguing that the undisputed evidence establishes that they were not deliberately indifferent to Knight's serious medical needs. Dkts. 87–88. Knight responded to the motion for summary judgment, and Defendants filed a reply. Dkts. 112, 116.

## II. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A material fact is one that affects the outcome of the suit." *Fidlar Technologies v. LPS Real Estate Data Solutions, Inc.*, 810 F.3d 1075, 1079 (7th Cir. 2016) (quotation marks and citation omitted). "A genuine issue exists as to any material fact when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The movant must either demonstrate "an absence of evidence supporting an essential element of the non-moving party's claim" or present "affirmative evidence that negates an essential element of the non-moving party's claim." *Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1016 (7th Cir. 2016) (citation omitted). In response, the non-movant "must make a sufficient showing on every element of his case on which he bears the burden of proof; if he fails to do so, there is no issue for trial." *Yeatts v. Zimmer Biomet Holdings, Inc.*, 940 F.3d 354, 358 (7th Cir. 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

When deciding a motion for summary judgment, the Court must view the record in the light most favorable to the non-moving party and draw all reasonable

8

inferences in favor of the non-moving party. *Smith v. Crounse Corp.*, 72 F.4th 799, 804 (7th Cir. 2023). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000).

"On summary judgment, the Court limits its analysis of the facts to the evidence that is presented in the parties' Local Rule 56.1 statements." *Kirsch v. Brightstar Corp.*, 78 F. Supp. 3d 676, 697 (N.D. Ill. 2015). Local Rule 56.1 requires a party seeking summary judgment to file an accompanying statement of material facts, with numbered paragraphs and citations to the record supporting those facts. *See* LR 56.1(d). "To adequately dispute a statement of fact, the opposing party must cite specific support in the record; an unsubstantiated denial or a denial that is mere argument or conjecture is not sufficient to create a genuinely disputed issue of material fact." *Kirsch*, 78 F. Supp. 3d at 697; LR 56.1(e)(3); *Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000) ("Factual allegations not properly supported by citation to the record are nullities."). "District courts are entitled to expect strict compliance with Rule 56.1, and do not abuse their discretion when they opt to disregard facts presented in a manner that does not follow the rule's instructions." *Gbur v. City of Harvey*, 835 F. Supp. 2d 600, 607 (N.D. Ill. 2011) (internal quotation marks and citations omitted); *see also Rivera v. Guevara*, 319 F. Supp. 3d 1004, 1018 (N.D. Ill. 2018) (stating that the court may disregard any part of a factual statement or response that consists of legal arguments or conclusions).

### III. Analysis

Knight alleges that Zahtz, Fior, and Ritz denied him adequate medical care in violation of the Eighth Amendment by persisting in a course of ineffective, conservative treatment for his hernia instead of providing him with surgery. Knight also seeks to impose *Monell* liability on Wexford for using its collegial review process to overrule Tuell's recommendation for a surgical consultation and for its practice of not reevaluating the effectiveness of Ritz's alternative treatment plan. Defendants seek summary judgment on the basis that Knight has failed to establish deliberate indifference against the individual Defendants and his *Monell* claim against Wexford fails as a matter of law.

The Eighth Amendment prohibits deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish a violation of the Eighth Amendment, Knight must show that: (1) he suffered from an objectively serious medical condition; and (2) the defendants were deliberately indifferent to that condition such that they "actually knew of and disregarded a substantial risk of harm." *Petties v. Carter*, 836 F.3d 722, 727-28 (7th Cir. 2016) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). A medical condition is serious if withholding treatment would result in further significant injury or unnecessary and wanton infliction of pain. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). As for the second factor, deliberate indifference is more than mere negligence or even medical malpractice. *See Petties*, 836 F.3d at 728. Deliberate indifference "requires a

showing [of] something approaching a total unconcern for the prisoner's welfare in the face of serious risks." *Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022).

The parties do not dispute that Knight's hernia constitutes an objectively serious medical condition. Accordingly, the only question is whether Knight has presented enough evidence to allow a reasonable jury to conclude that each Defendant acted with deliberate indifference.

## A. Deliberate Indifference – Zahtz, Fior, and Ritz

A prison official is deliberately indifferent only if they "know of and disregard[ ] an excessive risk to inmate health or safety." *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016). When a prison medical professional is accused of providing inadequate treatment, in contrast to no treatment, evidence of medical negligence or a mere disagreement with a doctor's medical judgment is not enough to prove deliberate indifference. *Id.* "By definition a treatment decision that's based on professional judgment cannot evince deliberate indifference because professional judgment implies a choice of what the defendant believed to be the best course of treatment." *Id.* (citing *Zaya v. Sood*, 836 F.3d 800, 805 (7th Cir. 2016)). When a medical professional claims that the treatment rendered issued from their medical judgment, that claim is owed deference as an assertion that they lacked a culpable mental state. *Zaya*, 836 F.3d at 805.

However, deference to a claim of medical judgment may be overcome by evidence that the defendant knew better than to make the medical decision. *Whiting*, 839 F.3d at 662-63; *Zaya*, 836 F.3d at 805. This evidence might include the

11

obviousness of the risk from a particular course of medical treatment, the defendant's persistence in a treatment known to be ineffective, or proof that the treatment departed radically from the accepted professional judgment, practice, or standards such that a jury may reasonably infer that the decision was not based on professional judgment. *Whiting*, 839 F.3d at 663.

Zahtz, Fior, and Ritz assert that their decisions regarding Knight's medical care were always based on their clinical judgment, and they were not under any constraints from Wexford or the Illinois Department of Corrections as to who or when they could refer a patient to see an off-site specialist for hernia surgery. Dkt. 114 ¶¶ 18, 59, 61. That assertion is entitled to deference unless Knight can produce enough evidence to raise the inference that it is pretextual and that they instead possessed a culpable, reckless mental state. *See Zaya*, 836 F.3dat 805.

Knight argues the individual Defendants did not base their treatment decisions on their medical judgment because they "engaged in a course of ineffective treatment for over 24 months which subjected Mr. Knight to needlessly suffer." Dkt. 112 at 8. Knight, relying on Tuell's August 2019 referral for a surgical consultation and his allegations of pain, insists that Defendants were aware that the conservative course of treatment was inadequate and that he should have been referred for hernia surgery long before September 2021. But Knight has not presented evidence that the conservative course of treatment he received for his hernia was a radical departure from accepted professional standards or so blatantly inappropriate for his needs that it shows a lack of professional judgment. *See White v. Woods*, 48 F.4th 853, 862 (7th

Cir. 2022); *Whiting*, 839 F.3d at 663; *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). Indeed, the testimony of Hefty obliterates any contention that their treatment was a radical departure. "It is not enough that the plaintiff simply believes the treatment was ineffective or disagrees with the doctor's chosen course of treatment. The challenged plan must deviate so substantially from accepted professional judgment that no reasonable physician would reach the same judgment." *Thomas v. Martija*, 991 F.3d 763, 772 (7th Cir. 2021) (citations omitted). Knight has not made that showing here.

It is undisputed that the standard of care for treating a hernia depends on the location, size, and characteristics of the hernia, the progression of the hernia, the patient's symptoms, and the objective findings of the hernia. Dkt. 114 ¶ 12. It is further undisputed that conservative treatment is the standard first approach that a practitioner will try in treating a hernia. *Id.* ¶ 13. Conservative treatment for a hernia would include relief through pain medications, adjustment in the patient's activities to mitigate symptoms of the hernia, reducing straining from climbing into an upper bunk, the provision of a hernia belt, instructions on how to reduce the hernia if it protrudes, and periodic evaluations of the hernia. *Id.*

This is precisely the treatment Knight received for his hernia. No reasonable jury would find that the medical treatment Knight received deviated "so substantially from accepted professional judgment that no reasonable physician would reach the same judgment." *Thomas*, 991 F.3d at 772. Although Knight did not receive the surgery he wanted until September 2021, "[d]isagreement between a prisoner and his

13

doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Pyles*, 771 F.3d at 409.

Knight argues that because his symptoms worsened while at Dixon his conservative course of treatment was inadequate. But Knight does not dispute that hernia surgery may be appropriate if the hernia becomes strangulated, incarcerated, or infected. Dkt. 114 ¶¶ 10–11, 15. However, Knight points to no evidence that his hernia was ever strangulated, incarcerated, or infected such that surgery became necessary. Until June 2021, Knight's hernia was reported as being fully reducible. In fact, Ritz recommended the alternative treatment plan for Knight's hernia specifically because it was easily reducible and there was no evidence of strangulation, incarceration, or infection. Dkt. 114 ¶ 25. In September 2019, Zahtz agreed that Knight did not need hernia surgery, describing Knight's hernia as small, easily reducible, and causing minimal pain. Dkt. 114 ¶¶ 27–28. Fior confirmed the lack of strangulation, incarceration, or infection as of April 8, 2020. *Id.* ¶ 32. Even by August 3, 2021, when Knight had his surgical consultation, Hefty determined that Knight's hernia did not present a medical emergency or require immediate surgical intervention. *Id.* ¶ 51.

Knight points to the fact that he eventually suffered from a bilateral inguinal hernia. But Knight does not argue that Zahtz, Fior, or Ritz were aware of and disregarded his bilateral hernia or that a bilateral hernia in itself required a different course of treatment, let alone surgery.

14

Knight also points to the pain he suffered from his hernia while waiting for surgery. Construing the facts in Knight's favor, a reasonable jury could believe Knight's testimony that he complained of worsening hernia pain. Although it is true that prolonging a prisoner's suffering by delaying medical treatment can constitute deliberate indifference, *Brown v. Osmundson*, 38 F.4th 545, 550 (7th Cir. 2022), Defendants did not delay in providing Knight medical treatment. Rather, Defendants determined, by using their professional judgment, that surgery was not required and treated Knight's hernia non-surgically. The undisputed evidence shows that medical staff provided Knight with non-surgical interventions in response to his complaints of pain. For example, in August 2019, when Knight was first evaluated at Dixon for his hernia, Tuell gave him a low bunk permit and noted that he already had Tylenol and a hernia belt. Dkt. 114 ¶¶ 22–23. In September 2019, in response to Knight's complaints that constipation was putting pressure on his hernia, Zahtz instructed Knight to resume taking the medications that Knight acknowledged helped with his constipation. Dkt. 114 ¶¶ 27–28. In response to complaints of pain between December 2020 and June 2021, Knight received different types and doses of pain medications to relieve his pain. Dkt. 114 ¶¶ 35–42. In fact, Knight does not dispute that on June 22, 2021, he reported that his pain medication had been helpful for his pain, and he was not interested in changing his pain medications at that time. Dkt. 114 ¶ 43.

Knight has not provided any evidence that it was necessary to refer him for a surgical consultation sooner because of his pain. Although Knight insists that

15

Defendants delayed in providing him with hernia surgery, that does not equate with a delay in providing necessary medical care that could support a deliberate indifference claim. The Eighth Amendment does not require doctors to keep patients free of pain. *Arce v. Wexford Health Sources Inc.*, 75 F.4th 680, 681 (7th Cir. 2023) ("[T]he Eighth Amendment does not entitle incarcerated patients to their preferred pain medication, nor does it impose the unrealistic requirement that doctors keep patients completely pain-free." (citations omitted)); *see also Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) ("Under the Eighth Amendment, Forbes is not entitled to demand specific care. She is not entitled to the best care possible. She is entitled to reasonable measures to meet a substantial risk of serious harm to her."). The mere fact that Knight continued to report pain, as pain is never likely to be wholly eliminated, does not plausibly raise the inference in Defendants' minds that the treatment was ineffective. At most, Knight has shown Defendants were negligent to the severity of his pain, but this does not amount to a constitutional violation. *See Petties*, 836 F.3d at 728. A constitutional violation exists only if "no minimally competent professional would have so responded under those circumstances." *Petties*, 836 F.3d at 729 (quoting *Collignon v. Milwaukee County*, 163 F.3d 982, 989 (7th Cir. 1998)). It was Knight's burden to submit evidence that, if believed, would show such a serious deficit in Defendants' course of action. *See Whiting*, 839 F.3d at 662. He failed to do so.

After reviewing the totality of the circumstances of Knight's medical care, Knight has failed to show that the individual Defendants were deliberately

indifferent to his serious medical needs. Therefore, Defendants' motion for summary judgment as to Knight's claims against Zahtz, Fior, and Ritz is granted.

## B. *Monell* – Wexford

Knight also claims that Wexford should be held liable under section 1983 for violating his constitutional rights by virtue of its policies and practices that led to inadequate medical care and a delay in necessary hernia surgery. Knight seeks to impose *Monell* liability on Wexford for using its collegial review process to overrule Tuell's recommendation for a surgical consultation and for its practice of not reevaluating the effectiveness of Ritz's alternative treatment plan.

The Seventh Circuit applies the theory of municipal liability announced in *Monell v. Department of Social Services*, 436 U.S. 658 (1978), in section 1983 claims brought against private companies acting under color of state law. *Dean v. Wexford Health Services, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021). Corporate providers, like Wexford, may be held liable under section 1983 if its policy, practice, or custom caused a constitution violation. *See Whiting*, 839 F.3d at 664.

As addressed above, Plaintiff has failed to establish any underlying claim of constitutionally defective medical care by the individual Defendants. Because the Court has determined that the individual defendants were not deliberately indifferent under the Eighth Amendment in not referring Knight for hernia surgery earlier, there is no underlying constitutional violation that could have been caused by any policy, practice, or custom. *See Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 463 (7th Cir. 2020) ("[I]f the plaintiff's theory of *Monell* liability rests

17

entirely on individual liability, as Donald's does here, then negating individual liability will automatically preclude a finding of *Monell* liability.") (internal quotation marks and citation omitted). Accordingly, Defendants' motion for summary judgment on the *Monell* claim against Wexford is granted. Having granted Defendants' motion for summary judgment on all claims, the Court need not determine whether injunctive relief and punitive damages are available.

## IV. Conclusion

For the reasons stated above, Defendants' motion for summary judgment is granted. All claims against all parties having been resolved, and this civil case is terminated. Final judgment shall enter.

Date: March 27, 2025          By: _____
                                   Iain D. Johnston
                                   United States District Judge